# United States Bankruptcy Court
## For The Eastern District Of Pennsylvania

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| ASOUSA PARTNERSHIP, | : | Bankruptcy No. 01-12295DWS |
| | : | |
| Debtor. | : | |
| | : | |
| ASOUSA PARTNERSHIP, | : | Adversary No. 04-1012 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SMITHFIELD FOODS, INC., a Virginia Corporation, | : | |
| SHOWCASE FOODS, INC., a Delaware Corporation, | : | |
| JOSEPH W. LUTER, IV, MICHAEL H. COLE, | : | |
| | : | |
| Defendants. | : | |

# Memorandum Opinion

**BY:  DIANE WEISS SIGMUND, Chief Bankruptcy Judge**

Before the court is Debtor's Motion to Compel Production of Documents (the "Motion") and the response thereto of Smithfield Foods, Inc., Showcase Foods, Inc., Joseph W. Luter, IV and Michael Cole (collectively "Smithfield"). For the reasons stated herein, the Motion shall be granted in part and denied in part.

## FACTUAL AND PROCEDURAL BACKGROUND[1]

The Debtor is a Pennsylvania general partnership that owns the land and building(s) located at 980 Glasgow Street, Pottstown, Montgomery County, Pennsylvania (the "Premises"). In or around May, 2000, the Debtor entered into a lease on the Premises (the "Lease") with Pennexx Foods, Inc., formerly known as Pinnacle Foods, Inc. ("Pennexx"). A dispute over the Lease led to an adversary action and subsequently Pennexx's eviction from the premises and a judgment against Pennexx for damage to the Premises. See Asousa Partnership v. Pennexx Foods, Inc. f/n/a Pinnacle Foods, Inc. (In re Asousa), Adv. No. 01-974 (the "Pennexx Litigation"). The monetary judgment was entered on September 2, 2003.

The present adversary action against Smithfield stems from the fact that on or about June 9, 2003 Smithfield, a creditor that held a controlling interest in Pennexx, took possession of substantially all the assets of Pennexx. The exact nature of this transaction is the subject of this adversary action. Debtor seeks, *inter alia*, to hold Smithfield liable for judgment against Pennexx under a successor liability theory. Smithfield has denied any relationship to Pennexx other than that of a secured creditor. See Answer to Amended Complaint ¶¶ 36-38.

In the course of discovery, Smithfield has withheld or redacted certain documents on the basis of the attorney-client privilege or work product doctrine. After a hearing on the

---

[1] These following background is provided merely to provide a context for the Motion and should not be construed as findings of fact in this adversary action.

Motion, the parties voluntarily narrowed the scope of the Motion and objections thereto, and

submitted to the Court for *in camera* review the documents to which there still remains

a dispute (the "Disputed Documents").

## DISCUSSION

The scope of discovery is governed by Fed. R. Civ. P. 26,[2] which states in relevant

part: "Parties may obtain discovery regarding any matter, not privileged, which is relevant

to the subject matter involved in the pending action." Fed.R.Civ.P. 26(b)(1). Moreover, Fed.

R. Civ. P. 26(b)(3)[3] encompasses the "work product doctrine," which protects documents and

tangible things prepared "in anticipation of litigation or for trial" unless the party seeking

production demonstrates "substantial need of the materials in the preparation of the party's

case," <u>and</u> that they are "unable without undue hardship to obtain the substantial equivalent

of the materials by other means."   <u>E.g.</u>, <u>United Coal Companies v. Powell Const. Co.</u>,

---

[2]  Made applicable here by Fed. R. Bankr. P. 7026.

[3]  Rule 26(b)(3), made applicable here by Fed. R. Bankr. P. 1018, states in relevant part:

. . . a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means.  In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

839 F.2d 958, 966 (3d Cir. 1988) (quoting the rule). Smithfield has alleged that the Disputed Documents are either subject to the attorney-client privilege or are protected work product and as such are immune from discovery.

It is well-established that the attorney-client privilege constricts the truth-finding process and is therefore to be construed narrowly. E.g., Westinghouse Electric Corp. v. Republic of the Phillippines, 951 F.2d 1414, 1423 (3d Cir. 1991). The party asserting the privilege bears the burden of showing (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made (a) is a member of the bar of a court, or his subordinate and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services or (iii) assistance in some legal proceeding, and not (d) for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. E.g., Rhone-Poulenc Rorer Inc. v. Home Indem. Co., 32 F.3d 851, 862 (3d Cir. 1994) (citing In re Grand Jury Investigation, 599 F.2d 1224, 1233 (3d Cir. 1979)). See also Greene, Tweed of Delaware, Inc. v. Dupont Dow Elastomers, LLC, 202 F.R.D. 418, (E.D. Pa. 2001). As noted above, part of this burden is proving that the privilege has not been waived.

Many of the Disputed Documents represent communications to or from defendant Michael Cole, Smithfield's General Counsel ("Cole"), whom Smithfield concedes also held for some undefined period the position of Secretary (see Answer to Amended Compl. ¶ 8),

or Richard Poulson, Smithfield's General Counsel and Executive Vice President ("Poulson").[4]  Where, as here, a corporation seeks to protect communication to or from an attorney who serves the corporation in both a legal and business capacity, the corporation must clearly demonstrate that the communication to be protected was given in the attorney's legal capacity, Teltron v. Alexander, 132 F.R.D. 394, 396 (E.D. Pa. 1990).  Simply describing these individuals as "in-house counsel" on the privilege log will be insufficient given their dual roles unless the document establishes the involvement of legal counsel.

Moreover, only communications made for the express purpose of obtaining or giving legal advice are protected.  "What would otherwise be routine, non-privileged communications between corporate officers or employees transacting the general business of the company do not attain privileged status solely because in-house or outside counsel is 'copied in' on correspondence or memoranda." Andritz Sprout-Bauer, Inc. v. Beazer East, Inc., 174 F.R.D. 609, 633 (M.D. Pa. 1997).  Indeed, as noted by one commentator:

> No misconception seems to be more common among litigators asserting the attorney-client privilege than the belief that if a document or draft has been through the hands of a lawyer, it is thereby automatically privileged from disclosure.  If a lawyer is merely copied on documents prepared for reasons other than obtaining legal advice, the privilege is erroneously asserted and will not attach.  Insulation from discovery cannot be so readily or fraudulently obtained.

---

[4]  Smithfield identifies both Poulson and Cole as holding, *inter alia*, the title of "General Counsel." Defendants' Memorandum in Opp. To Debtor's Motion to Compel Production of Documents ("Smithfield Mem.") at 5, 7.  At least one document indicates that Cole's titles at one time included Vice President, Secretary, and Deputy General Counsel.  See SFD15424 (document retention memo).

Edna Selan Epstein, <u>The Attorney-Client Privilege and the Work Product Doctrine</u> 153-54 (3d ed. 1997).

As noted above, the work product doctrine protects documents and tangible things prepared in anticipation of litigation or for trial.  In determining whether a document was prepared "in anticipation of litigation," the appropriate inquiry is "whether in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation." <u>Martin v. Bally's Park Place Hotel & Casino</u>, 983 F.2d 1252, 1258 (3d Cir.1993).  There must be a "reasonable anticipation" of litigation, <u>i.e.</u>, not merely a remote prospect or  inchoate possibility.  "Rather, a party must show that there existed 'an identifiable specific claim of impending litigation when the materials were prepared.'" <u>In re Gabapentin Patent Litigation</u>, 214 F.R.D. 178, 183 (D. N.J. 2003); <u>accord</u> <u>In re Grand Jury Investigation</u>, 599 F.2d 1224, 1229 (3d Cir. 1979); <u>Schmidt, Long & Assoc., Inc. v. Aetna U.S. Healthcare, Inc.</u>, 2001 WL 605199, at *4 (E.D. Pa. 2001).  Moreover, the document must have been prepared for the prospect of litigation and no other purpose.  214 F.R.D. at 184.

Finally, Rule 26(b)(5) places upon Smithfield as the party invoking the privileges, a duty to properly describe the documents:

> When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection.

Fed. R. Civ. P. 26(b)(5).  Applying these principles, to the Disputed Documents submitted *in camera*, along with the descriptions found in the privilege log and Smithfield's memoranda, I make the following findings:

1.  SFD3721-22:  This memo from Steven B. King to "File," dated August 31, 2002, re: "Asousa litigation" describes a meeting attended by the writer on July 31, 2002.  While the privilege log describes this as a "communication relating to legal strategy," it fails to identify Steven King as its counsel or Smithfield as a recipient.  I cannot therefore find an attorney-client communication subject to the privilege.[5]  The fact that the document is marked "Privileged and Confidential Attorney Work Product," without more, does not establish that it is protected as such.  Work product must be created by a party or its agent.  Smithfield's failure to identify Mr. King precludes a finding of work product.[6]

2.  SFD14895-98:  A series of e-mails from Poulson, instructing outside counsel to take certain actions or make statements to Pennexx Foods, Inc. ("Pennex") on behalf of Smithfield.  Given the purpose of the privilege, to protect the <u>confidential</u> relationship between attorney and client, it is not surprising that "whenever the communication is

---

[5]  Even if Smithfield had identified King as its counsel, the document does not pertain to a fact told by the client in private but rather simply relays what happened at a meeting that included Mike Queen, President of Pennexx and Pennexx counsel John Gallagher, as well as Ellis Shore (unidentified) and David Rosenfeld, identified as "bankruptcy counsel."  Communications between corporate counsel and individuals outside the corporation will not ordinarily be privileged even if the information is eventually conveyed by the attorney to the client.  <u>Union Carbide Corp. v. Dow Chemical Co.</u>, 619 F.Supp. 1036, 1047 ( D. Del.1985).

[6]  Moreover, the subject matter of the memo is clearly the Pennexx Litigation, to which Smithfield was not a party, belying the assertion that Smithfield created the memo in anticipation of litigation.  Smithfield failed to provide any factual basis that, at the time this memo was written, there was a reasonable anticipation of litigation against Smithfield.

intended by the client to be made public or revealed to third persons the element of confidentiality is destroyed and with it the privilege."  In re Langswager, 392 F.Supp. 783, 786 (N.D. Ill. 1975); accord United States v. Teller, 255 F.2d 441, 447 (2d Cir. 1958) ("communications between an attorney and his client, though made privately, are not privileged if it was understood that the information communicated in the conversation was to be conveyed to others").  This clearly expressed intent to convey information to a third party destroys the asserted attorney-client privilege.  Nor has Smithfield indicated that these e-mails were created in anticipation of litigation as required for protection under the asserted work-product doctrine.

3. SFD15207:  This is a memo/letter to Smithfield employees outlining its document retention policy in light of pending shareholder class action litigation.  While such documents are typically created by counsel in preparation for litigation, I am not convinced that something as routine as a document retention policy falls within the work product doctrine or attorney-client privilege.  See Doe v. District of Columbia, 230 F.R.D. 47, 55-56 (D. D.C. 2005) (finding that document retention policies fall within the purview of discoverable material under 26(b)(1)'s allowance of "discovery regarding any matter, ... including the existence, description, nature, custody, condition, and location of any ... documents.); Nike, Inc. v. Brandmania.com, Inc., 2002 WL 32348549, *(E.D. Pa. Oct. 7, 2002) ("Document retention policies have been held discoverable in other cases") (citations omitted).  Smithfield has failed to indicate why the document retention policy should be protected in this case.

-8-

4. SFD15418-19:  The privilege log labels these e-mail exchanges between Smithfield employees and individuals at "marsh.com"[7] as "communications with agents of outside counsel . . . for future litigation."  While the attorney-client privilege can be extended to the client's communication with an attorney's agent, like the communications with the attorney himself, the communication must be for the purpose of obtaining legal advice from the attorney.  E.g., In re Grand Jury Proceeding, 79 Fed.Appx. 476, 477 (2d Cir. 2003) (Oct 31, 2003) (citing United States v. Kovel, 296 F.2d 918 (2d Cir.1961)); accord HPD Laboratories, Inc. v. Clorox Co., 202 F.R.D. 410, 414 (D. N.J. 2001).  I cannot determine that these exchanges were for the purpose of Smithfield obtaining legal advice from its outside counsel, Hunton & Williams LLP ("H&W").  The privilege log's ambiguous reference to future litigation is insufficient to meet the reasonable anticipation standard required for work product protection, nor is there any reference to litigation in the e-mails themselves.

Moreover, the subject matter of the e-mails is obtaining insurance from Marsh based upon an appraisal.  The only appraisal during this time period appears to be that which was performed by Valuation Research.  As discussed below, Smithfield engaged in a blatant subterfuge, i.e., using H&W as a mere conduit, in order to make its relationship with Valuation Research appear privileged.  Infra Finding No. 40.  As such, I am dubious of the privilege log's assertion, unsupported by anything else, that Marsh was an agent of H&W.

---

[7]  Marsh is a "risk and insurance services firm" providing services such as: "global risk management, risk consulting, insurance brokering, financial solutions, and insurance program management services for businesses, public entities, associations, professional services organizations, and private clients in over 100 countries."  See http:/www.marsh.com.

5.  SFD15424:  Duplicate of SFD15207.  <u>Supra</u> Finding No. 3.

6.  SFD15670-73,  SFD15701-03,  SFD15717-19,  SFD15738-40,  SFD15757-58, SFD16387-88, SFD16389-90:  This is a series of related e-mails on the subject of how to handle transfers of funds to Pennexx.  Smithfield has failed to meet its burden of establishing that any attorney-client privilege has not been waived by the inclusion or forwarding of the e-mails to an individual at Pennexx and/or Kronick Kalada Berdy & Co. P.C., certified public accountants, specifically Joseph Beltrami ("Beltrami").  While Smithfield asserts that Beltrami is Chief Financial Officer of co-defendant Showcase Foods, Inc., the communications are not sent to a smithfieldfood.com address like those sent to other Smithfield employees or a domain with the name Showcase Foods.  <u>Compare</u> SFD00016471 (e-mail from Joseph Beltrami @showcase-foods.com).  The pennexx.com and kkbcpas.com addresses for Beltrami imply that he holds other positions with these third parties, and the e-mails themselves do not establish that they are addressed to Beltrami in his capacity as Showcase Foods CFO.  Nor has Smithfield shown that these e-mails were sent in anticipation of litigation so as to transform them into work product.[8]

7.  SFD16466-68:  This is a series of e-mails, two of which have been redacted. The redacted e-mails, while copied to Cole, do not make clear whether they are sent to Cole in his capacity as General Counsel or as Secretary of Smithfield.  Nor is there a request,

---

[8]  These e-mails do not sufficiently indicate that they were prepared in anticipation of litigation, notwithstanding the ambiguous reference to "possible litigation" in the privilege log. While Cole does make a closing remark about hearing that Pennexx creditors, including Debtor, are "coming after" Smithfield, this is made only after a consensus was reached as to how to handle the transfer of funds to Pennexx.  His comment appears at best to be an afterthought rather than the sole impetus of this discussion, as required for the work product doctrine to apply.

explicit or implicit, for legal advice apparent in these documents so as to support the alleged

attorney-client privilege.

     8.  SFD16469-70:  These are e-mails between Craig Liegel ("Liegel"), whom the

parties agree is the CFO of Packerland, a subsidiary of Smithfield, and H&W attorneys.

Smithfield employees are copied on this e-mail.  Even assuming communications from Liegel

fall within any attorney-client privilege between H&W and Smithfield,[9] the subject of these

e-mails is an appraisal of Pennexx assets by Valuation Research.  While Liegel states that

H&W is the "party engaging [Valuation Research's] services," other e-mails make it

abundantly clear that this was a "ghost-hiring" on Smithfield's behalf to create the

appearance of attorney-client privilege over the appraisal, as was H&W's subsequent receipt

and "laying of hands" upon the report.  Infra Finding No. 40.  Liegel's communication with

H&W is not for the purpose of Smithfield securing legal advice/services, and the privilege

---

    [9]  Liegel appears on many of the Disputed Documents, yet he is never identified other than as an employee of Packerland, and Smithfield makes no attempt to identify his role in the Pennexx transactions discussed in these documents.  A corporate party asserting the attorney-client privilege over communication between its attorney and another corporation cannot meet its burden by merely identifying the second corporation as a related affiliate or subsidiary.  Moore v. Medeva Pharmaceuticals, Inc., 2003 WL 1856422, *3 (D. N.H. 2003).  Indeed, as noted by the Ninth Circuit Court of Appeals:

> [The United States Supreme Court in] Upjohn rejected a mechanistic approach to applications of the attorney-client privilege in the corporate context.  Thus, communications between employees of a subsidiary corporation and counsel for the parent corporation, like communications between former employees and corporate counsel, would be privileged if the employee possesses information critical to the representation of the parent company and the communications concern matters within the scope of employment.

Admiral Ins. Co. v. U.S. Dist. Court for Dist. of Arizona, 881 F.2d 1486, 1493 n.6 (citing, Upjohn v. United States, 449 U.S. 383, 101 S.Ct. 677 (1981)).  Having provided no information to the Court regarding Liegel, Smithfield has failed to demonstrate that communications between H&W and Liegel are critical to H&W's representation of Smithfield.

does not attach.  As to the asserted work product doctrine, nothing in these e-mails indicates they were prepared in anticipation of litigation.

9. SFD16471: This e-mail from Beltrami (jbeltrami@showcase-foods.com) includes Curtis Carlson (H&W) and Cole among seven addressees.  There is nothing in this document from which I can discern even an implicit request for legal advice or services.  Rather, it appears to simply copy outside counsel on a routine business discussion, i.e., the status of an insurance payment.  Nor is it clear this is being sent to Cole in his capacity as General Counsel.

10.   SFD16562-570:   This is a draft appraisal report authored by Valuation Research and addressed to H&W.  As discussed below, contemporaneous e-mails evidence that H&W's involvement in Valuation Research's work was artifice, used solely to create the appearance of the now-asserted attorney-client privilege.  Infra Finding No. 40. Moreover, Smithfield's privilege log identifies this report as sent to Beltrami, but not in what capacity, therefore failing to meet its burden of showing non-waiver of the "privilege." Supra Finding No. 6.  Finally, I note that the privilege log describes the report as an attachment to a "communication with in-house counsel."  This is but one of many Disputed Documents so identified.  "Attachments which do not, by their content, fall within the realm of the privilege cannot become privileged by merely attaching them to a communication with the attorney. To permit this result would abrogate the well-established rule that only the communications, not underlying facts, are privileged."  Sneider v. Kimberly-Clark Corp., 91 F.R.D. 1, 4 (N.D. Ill. 1980. Accord O'Connor v. Boeing North American, Inc., 185 F.R.D. 272, 280 (C.D. Cal. 1999); Leonen v. Johns-Manville, 135 F.R.D. 94, 98 (D. N.J. 1990).

While the appraisal report states Valuation Research's belief that it will be used as a basis for, inter alia, "potential litigation purposes," this reference is too vague to support a claim of work product. Gabapentin, 214 F.R.D. at 183. Moreover, the assertion conflicts with Valuation Research's proposal letter, which states only that the report will be used only for "management planning" purposes. Infra Finding No. 32. Given the artifice surrounding the Valuation Research appraisal, I find it more likely that the reference to "potential litigation," like H&W's involvement, was added solely to give rise to a colorable claim that the report is a protected document.

11. SFD16728-31: This is a four-page financial statement, titled "Pennexx Foods, Inc. - Reconciliation of CAR amounts." The privilege log describes this document as being authored by Pennexx and sent to Smithfield's Vice-President and CFO, Daniel Stevens ("Stevens"), with copies to Cole and outside counsel. Smithfield provides no explanation as to how a document from Pennexx can fall within any attorney-client privilege between Smithfield and its counsel.[10]

12. SFD17623-26: This is an engagement letter from Ernst and Young LLP ("E&Y") to John Schweiters, a board member of Smithfield. Smithfield describes this letter, along with a string citation of other documents, as a communication between Smithfield and "agents of outside counsel." Smithfield Mem. at 8 n.6. However, the letter itself explicitly "confirms [E&Y's] understanding of the scope and terms of Smithfield's engagement," thus indicating that it was Smithfield, not outside counsel that engaged E&Y. The privilege log

---

[10] This is another document described as an "attachment" to a communication to counsel. Supra Finding No. 10. In addition, the log also indicates that this document was sent to Robert F. Urell, whom Smithfield fails to identify notwithstanding its burden to prove non-waiver.

indicates that the letter was an attachment to a communication with Cole, but nothing indicates it was sent to him in his legal capacity. Nor would Smithfield's transmittal of the letter to in-house counsel change the otherwise unprivileged nature of the underlying document. Supra Finding No. 10. Finally, while the letter bears the designation "Attorney work-product" the letter is not so designated on the privilege log. In any case, a claim of work product is inconsistent with the letter itself, which explicitly makes clear that E&Y cannot, under the Sarbanes-Oxley Act of 2002, provide expert services for the audit client or its legal representative for the purposes of litigation and requires that Smithfield acknowledge that there is no pending or threatened litigation arising out of the engagement issue.

13. SFD17627-29: This is a series of e-mails, some redacted, discussing (1) the request of Pennexx's President Mike Queen for directors and officers insurance in regards to a pending class action against Pennexx and Smithfield and (2) the status of an escrow account. While the parties to the redacted e-mails include Cole and Poulson, it is unclear whether they are being copied in their business or legal capacity. Smithfield has failed to show the applicability of the attorney-client privilege to the redacted e-mails. In addition, while Cole mentions that an investigation of Pennexx might be useful to Smithfield in the pending class action litigation, this does not satisfy the requirement that protected work product be prepared solely in anticipation of litigation or for trial. This statement is at best an afterthought to the main thrust of the redacted e-mails, D&O insurance and status of an escrow account.

14.  SFD19195-19217, SFD19598-99, SFD19600-01:  The privilege log identifies these documents as "attachments to communication" with in-house counsel and indicates Cole as the sole recipient.[11]  The documents themselves appear to be a collection of schedules and exhibits and draft contracts. Smithfield asserts that the authors of these documents are Pennexx or Deborah A. Bentley ("Bentley"), whose identity is not explained.  Smithfield's memorandum describes these documents generally, along with others, as drafts of documents sent to attorneys for legal advice.  Smithfield Mem. at 4 n.4.  Without more detail, there are two possible interpretations:  (1) Smithfield received these documents from Pennexx and/or Bentley and simply forwarded them to in-house counsel, which does not give rise to the privilege, Snieder, 91 F.R.D. at 1; or (2) these documents represent Smithfield's changes to Pennexx drafts which it then submitted to counsel for legal advice, which would be privileged.  As Smithfield has the burden of showing the attorney client privilege, its failure to be more descriptive is fatal to its claim of privilege.

15.  SFD23478-85, SFD23486-93:  These documents are two drafts (dated 6/1/2003 and 6/2/2003, respectively) of a memorandum written by Robert McClain ("McClain"), who appears to be an employee of Smithfield.[12]  The later-dated draft bears the heading "Prepared at Michael Cole's request for possible litigation."  This designation is belied by the introductory paragraph which indicates that McClain wrote the document on his own initiative after reading certain affidavits presented to him by Cole from Pennexx employees

---

[11]  This alone is insufficient to endow these documents with attorney-client privilege. See supra finding No.10.

[12]  I gather this from statements in the memo, as Smithfield does not bother to identify McClain.

and/or officers that made what McClain felt were slanderous statements.    Moreover,

Smithfield provides no background facts or information from which the Court can construe

McClain to be talking to Cole in Cole's capacity as in-house counsel for the purpose of

providing legal advice to Smithfield.    The header's reference to a "possible litigation"

purpose, in addition to being self-serving, is simply too vague to support a claim of work

product.    No other explanation is provided, nor does the document itself mention any

specific, identifiable claim of impending litigation.    Gabapentin Patent Litigation, supra,

214 F.R.D. at 183.

16.  SFD27706:  Duplicate copy of document retention memo.  See Supra Finding

No. 3.

17.  SFD29707: E-mail from Poulson to Cole instructing Cole to consult with outside

counsel regarding sending Pennexx notice of a default under a credit agreement.  Outside

counsel is not addressed on this e-mail.  However, it is likely that Poulson and/or Cole given

the subject of this communication, are acting in a legal capacity so as to implicate the

attorney-client privilege.[13]  This document is protected.

18.  SFD34824: E-mail from Smithfield employee to numerous recipients, including

Cole and Poulson.  I cannot ascertain that Cole or Poulson are being addressed in their legal

capacity or whether this communication is in furtherance of legal advice.  In any case,

---

[13]  The author and addressee on the e-mail itself belies the privilege log's description of this
document as between in-house and outside counsel.  Assuming Smithfield meant a communication
between in-house counsel, I have given Smithfield the benefit of the doubt that Poulson and/or Cole
were acting as General Counsel in this matter.

Beltrami is also a recipient, which appears to obviate any asserted attorney-client privilege. _Supra_ Finding No. 6.

19.   SFD34829-30:  Series of e-mails between Cole and Poulson, with copies to Smithfield President, Larry Pope ("Pope") and outside counsel.  The subject of the e-mails is a letter from an attorney referring to a potential claim against Smithfield, unrelated to the instant litigation.  The subject matter and recipients sufficiently indicate an attorney-client communication for the purpose of securing legal advice or services.  This document is protected by the attorney-client privilege.

20.   SFD34936-44:  The privilege log identifies this document, a draft agreement between Smithfield and Pennex, as an "attachment to communication between outside counsel, in-house counsel, and others."  Smithfield's memorandum describes this generally in a string citation along with other documents as drafts of documents sent to attorneys for legal advice.  Smithfield Mem. at 4 n.4.  The log identifies the authors as Smithfield and Pennexx and recipients as Poulson, Cole, and H&W attorneys.  I can construe this document as either (1) from Pennexx and forwarded by Smithfield to counsel, which does not give rise to the privilege, _Snieder_, 91 F.R.D. at 1; or (2) a draft representing Smithfield's changes, submitted to counsel for legal advice, which would be arguably be privileged.  _Supra_ Finding No. 14.  Again, Smithfield's failure to be more precise is fatal to its claim of privilege. Nor does Smithfield provide any information in support of its claim of work product, _i.e.,_ that the document was prepared in anticipation of litigation.

21.  SFD35120:  The privilege log identifies this as a draft letter to Pennexx president prepared by outside counsel for Pope's signature.  Smithfield's intention to send this to Pennexx obviates the requisite confidentiality.  <u>See</u> Finding No. 2.

22. SFD35262:  This is an e-mail from Cole to Poulson and outside counsel that forwards an excerpt from a January 30, 2003 Pennexx press release.  I cannot ascertain from Cole's commentary to the excerpt whether this communication is for the purpose of obtaining legal advice or services.  The privilege log merely identifies this as a communication between in-house and outside counsel.  This is insufficient to demonstrate the privilege.  Nor does Smithfield provide any basis whatsoever to support the claim of work product.

23.  SFD35883:  This is an e-mail from an H&W attorney to Poulson that references a "clean and redlined version of our updated Pennexx analysis."  The attachment is not included, but it is described in the privilege log as "research under Pennsylvania law." While the attachment (not provided in the *in camera* submission) might be protected, the e-mail itself provides no legal analysis or advice nor discloses any confidential communication from Smithfield; it is therefore not subject to the attorney-client privilege. Nor is there anything in the e-mail itself which indicates applicability of the work product doctrine to the e-mail.

24.  SFD35983:  This is an e-mail from Tracey Clontz on behalf of Pope, addressed to Cole, Poulson, and other Smithfield executives.  While the subject line states "Memo to Pennexx File," the memo is not attached and the body of the e-mail is blank.  There is

nothing here from which I can determine the asserted attorney-client privilege is applicable to the e-mail.

25. SFD36007-10:  Duplicate copies of SFD14895-98.  Supra Finding No. 2.

26. SFD00036011:  This is an e-mail from Poulson to outside counsel, with copy to Stevens.  I find that the body of the e-mail sufficiently evidences an explicit request for legal services, with no outside parties included in the communication, and is therefore protected by the attorney-client privilege.

27. SFD36028:  This is a one-sentence e-mail from Poulson to Cole regarding a Pennexx bond sale.  It does not sufficiently indicate that either individual is acting in their legal capacity so as to trigger any attorney-client privilege.  Nor is there any indication that it was created in anticipation of litigation.

28. SFD36037:  This is a blank e-mail from Tracey Clontz to numerous Smithfield recipients and Richard Vesta, president of Packerland.  The subject line states"Pennexx Document Retention Memo from Mike Cole."  While the referenced memo is not attached as part of the *in camera* submission, this e-mail is dated August 18, 2003, the same document date identified by the privilege log for the document retention memo discussed above. See supra Finding No. 3.  I have already determined that Smithfield failed to show that that document is protected.  Id.  The e-mail itself is blank and merely operates as a transmittal vehicle for the memo.

29. SFD36330-31:  Duplicate of SFD16469-70.  Supra Finding No. 8.

30. SFD36485-88: This document is an unexecuted "assignment agreement" between Showcase and unnamed party(ies).  The privilege log describes it as an "attachment to communication" between outside counsel and others, but the author is named as Showcase and the recipients are Stevens and another Smithfield employee.[14]  A communication between attorney and client is not apparent.  Nor is there any indicia that this document was prepared in anticipation of litigation or for trial.

31.  SFD40807-15:  Duplicate of SFD16562-570.  Supra Finding No. 10.

32.  SFD41020-21, SFD41022-26:   E-mail from Liegel to numerous individuals forwarding proposal letter from Valuation Research, and the proposal letter itself, respectively.   Beltrami (jbeltrami@pennexx.com), among others,[15] is included as an addressee on the e-mail.  Absent any explanation, Smithfield fails to show non-waiver by this disclosure to others.  Supra Finding No. 6.  Neither the e-mail nor the proposal letter indicate they were prepared in anticipation of litigation, and in fact the letter states that Smithfield's engagement of Valuation Research is for "management planning purposes."  Finally, Smithfield has already voluntarily produced the e-mail (SFD41020-21).  Infra Finding No. 40 (SFD42084-85 - unredacted portion).

---

[14] The privilege log recipients seem at odds with the document description in Smithfield's memorandum as a draft agreement sent to outside counsel for legal advice.  Smithfield Mem. at 4 n.4.

[15] There are other recipients whom Smithfield fails to identify so as to meet its burden of showing non-waiver of the privilege:  Jeffrey Johnson, Mark Linzmeir, Jeff Deel, Mike Ragsdale, Mike Kovach, Tracey Turner.  There are also individuals at related entities whose roles are unspecified, precluding me from determining non-waiver of the privilege:   Richard Vesta (Packerfield) and an individual at Moyer Packing Co.  Supra Finding No. 8 n.9.

33. SFD41042-44: "Memo to file" on Ernst & Young ("E&Y") letterhead regarding E&Y's visit to Pennexx. The privilege log identifies the author as "E&Y engagement team" and recipients as Stevens ( Smithfield CFO and VP) and George Farragher (unidentified), belying any attorney-client communication. Even giving credence to the privilege log description of the memo as an "attachment to communication" with in-house and outside counsel, merely forwarding the E&Y letter to counsel does not transform it into a privileged document. Supra Finding No. 10.

34. SFD41052-55: Duplicate copies of SFD16389-90. Supra Finding No. 6.

35. SFD41094, SFD41106: E-mails from a Smithfield employee to several recipients, including Cole and outside counsel. While the privilege log describes these generally as communications with in-house and outside counsel, there is insufficient information for the Court to determine whether these communications are for the purpose of Smithfield securing legal advice or services.

36. SFD41873: Duplicate of SFD35983. Supra Finding No. 24.

37. SFD41924-25: This is a series of e-mails, most of which are redacted, and which is for the most part a duplicate of SFD17627-29. Supra Finding No. 13. This copy, however, ends with an e-mail from Stevens to Cole not found in the prior document. I do not find that this final e-mail adds anything which would change my prior finding: Smithfield has failed to show the applicability of the attorney-client privilege or work product doctrine to these e-mail exchanges.

38. SFD41936: The redacted email in this exchange is from Beltrami to Stevens and outside counsel. From Beltrami's e-mail address, jbeltrami@showcase-foods.com, I infer he is acting in his capacity as a Showcase officer. The topic of the e-mail suggests that it is related to a matter upon which outside counsel was advising Smithfield. <u>Supra</u> Finding No. 19. Finally, there is an explicit request for legal advice. I therefore find the attorney-client privilege protects the redacted e-mail.

39. SFD42080-81: The redacted email in this exchange was sent to, <u>inter alia</u>, Beltrami (jbeltrami@pennexx.com) and an individual at Moyer Food Packing, a subsidiary of Smithfield. As Smithfield fails to address in what capacity Beltrami is acting or the role of the Moyer employee, it fails to show that the asserted attorney-client privilege has not been waived.

40. SFD42082-85: This document consists of a series of e-mails, the majority of which have been redacted. While the redacted e-mails include discussions between Smithfield and its outside counsel, Liegel is included as an addressee or has been forwarded the communication. Smithfield has failed to show that the inclusion of Liegel does not destroy the attorney-client privilege. <u>Supra</u> Finding No. 8, n.9.

More significantly, the redacted e-mails evidence what can only be described as a stratagem to create the appearance of attorney-client privilege. The unredacted e-mails make it abundantly clear that Valuation Research submitted to Liegel a proposal to conduct an appraisal of the Pennexx plant on behalf of Smithfield. Liegel forwarded the proposal to Stevens (Smithfield). From this, and from the proposal itself, <u>supra</u> Finding No. 32, it is clear that the engagement of Valuation Research was for a business purpose ("management

assessment") rather than to assist H&W in its legal representation of Smithfield as asserted. See Smithfield Mem. at 9.

Notwithstanding this reality, the redacted e-mails show Cole forwarding the proposal to H&W attorneys with the following questions: "Should the lawyers be involved [with the Valuation Research appraisal] to keep it privileged?"  In response, H&W attorney Peter Partee responds:

> . . . Curtis and/or I should have discussions with the appraiser beforehand, and if you prefer, H&W can retain the appraiser directly for Smithfield's benefit in the hope that we can keep the appraisal privileged.  Even if Smithfield retains the appraiser, we can be the recipient of the appraisal, then forward it to you, which also should help the case for maintaining it as privileged.

SFD42082-83.  The purpose of the redacted communication is not to obtain H&W's legal advice or services.  To the contrary, these redacted e-mail exchanges show that H&W was brought into the Valuation Research engagement solely to "lay hands" upon the work of Valuation Research in an attempt to create an attorney-client privilege around what would be an otherwise an unprivileged appraisal report.  The privilege clearly does not attach in this situation.  Epstein, supra, 153-54.

41.   SFD42905-910:   The privilege log identifies this document as a chart summarizing Pennexx's assets, created at the request of counsel.  The log, however, also identifies the author of this chart as Pennexx[16] and the only recipient as Jeffrey A. Deel, who is unidentified.  There is no basis for Smithfield's assertion of attorney-client privilege.

---

[16] In this, the privilege log is inconsistent with the assertion in Smithfield's memoranda, that it created the document.  Smithfield Mem. at 4 n.2.

Neither the log nor Smithfield's brief indicates that the chart was prepared in anticipation of litigation, belying its invocation of the work product doctrine.

42. SFD45554-59: This is a series of e-mails between H&W attorneys and Stevens and another Smithfield employee conveying legal advice regarding an auction of Pennexx property. It is protected by the attorney-client privilege.

43. SFD45560: This e-mail is from an H&W attorney to Cole, but it merely conveys an order that was submitted to the United States District Court for the Eastern District of Pennsylvania and sets forth what third parties arriving at the anticipated auction will be told. The intent to relay the information in this communication to the general public destroys any attorney-client privilege. Supra Finding No. 2.


**CONCLUSION**

For the reasons stated above, I find that Smithfield has met its burden of proving that the following Disputed Documents are protected by the attorney-client privilege: SFD34829-30; SFD36011; SFD29707; SFD41936 (redacted portion only); and SFD45554-59. As to the remaining documents, Smithfield has not met its burden of showing either attorney-client privilege or work product. It shall produce them to Debtor within ten days.

An Order consistent with this Memorandum Opinion shall issue.


_____
DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge

Dated:   November 17, 2005

# UNITED STATES BANKRUPTCY COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| In re | : | Chapter 11 |
| | : | |
| ASOUSA PARTNERSHIP, | : | Bankruptcy No. 01-12295DWS |
| | : | |
| Debtor. | : | |

| | | |
|---|---|---|
| | : | |
| ASOUSA PARTNERSHIP, | : | Adversary No. 04-1012 |
| | : | |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| SMITHFIELD FOODS, INC., a Virginia Corporation, | : | |
| SHOWCASE FOODS, INC., a Delaware Corporation, | : | |
| JOSEPH W. LUTER, IV, MICHAEL H. COLE, | : | |
| | : | |
| Defendants. | : | |

# ORDER

**AND NOW** this 17th day of November 2005, upon consideration of Debtor's Motion to Compel Production of Documents (the "Motion") and the response thereto of Smithfield Foods, Inc., Showcase Foods, Inc., Joseph W. Luter, IV and Michael Cole (collectively "Smithfield"), and for the reasons stated in the accompanying Memorandum Opinion;

It is hereby **ORDERED** that the Motion is **GRANTED In Part** and **DENIED in Part**. Smithfield shall produce to Debtor, in unredacted form, within ten days following entry of this Order all of the documents submitted to the Court for *in camera* review except

for: SFD34829-30; SFD36011; SFD29707; SFD41936 (redacted portion only); and

SFD45554-59.


_____

DIANE WEISS SIGMUND
Chief U.S. Bankruptcy Judge


Copies to:

Steven M. Coren, Esquire
KAUFMAN, COREN, RESS & WEIDMAN, P.C.
1525 Locust Street, 17th Floor
Philadelphia, PA 19102

Milind M. Shah, Esquire
REED SMITH, LLP
2500 One Liberty Place
1650 Market Street
Philadelphia, PA 19103-7301

Edward J. Fuhr, Esquire
Eric H. Feiler, Esquire
Jessica M. Erickson, Esquire
Riverfront Plaza, East Tower
951 East Byrd Street
Richmond, VA  23219-4074

Dave P. Adams, Esquire
Office of the U.S. Trustee
833 Chestnut Street
Suite 500
Philadelphia, PA 19107